Filed 4/13/26  Garcia v. Gordon CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| ARIANA GARCIA,<br><br>    Appellant,<br><br>v.<br><br>STEVE GORDON, as Director, etc.,<br><br>    Respondent. | 2d Civil No. B343552<br>(Super. Ct. No. 24CV03233)<br>(Santa Barbara County) |

Appellant Ariana Garcia petitioned for a writ of mandamus directing respondents California Department of Motor Vehicles and its director, Steve Gordon (collectively DMV), to rescind the suspension of her driver's license.  The trial court denied the petition, deciding the weight of the evidence supported DMV's finding that appellant refused a chemical test of her blood alcohol content.  (Veh. Code,[1] § 13350 et seq.)  We will affirm.

_____

[1] All statutory references are to the Vehicle Code unless otherwise stated.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was in a car accident near Lompoc in March of 2024. Officer Nathan Burd of the California Highway Patrol arrived at the scene shortly after. He spoke to appellant while paramedics treated her injuries in an ambulance. He determined appellant was not at fault for the accident but suspected she had been drinking alcohol. Appellant stated she drank only one shot of vodka at a friend's house before driving.

Officer Burd interviewed appellant later that day at Lompoc Valley Medical Center. She admitted feeling the effects of the vodka but refused to perform breath and field sobriety tests. Appellant also refused to take a chemical test to establish her blood alcohol content. Officer Burd placed her under arrest for drunk driving. (§ 23152, subd. (a).)

DMV suspended appellant's driving privileges for refusing a chemical test. (§ 13353, subd. (a)(2).) She requested an administrative hearing. (*Id.*, subd. (e).) Officer Burd submitted a sworn statement to DMV (Form DS 367) stating that appellant admitted to driving the vehicle involved in the collision, and appeared to have "[b]loodshot/watery eyes," the "[o]dor of alcoholic beverage," "[u]nsteady gait," and "[s]lurred speech." The 367 form identified the violations as "Chemical Test Refusal" and "PAS or Other Chemical Test Refusal." The narrative section briefly described Burd's arrival at the accident and how he initiated contact with appellant. It referred the reader to "crash report # 9755-2024-00110 for further information."

Officer Burd submitted the crash report to DMV as well. It included an "intoxication narrative" describing his investigation in detail. He stated appellant refused to look him in the eyes when requested, then accused him of being racist and "trying to

pin the crash on [her]." She refused blood testing after receiving both preliminary alcohol screening and chemical test admonishments. Appellant then actively resisted the nonconsensual draw by tensing up, crossing her arms, and placing her hands into her armpits. Officer Burd held her legs while another officer held her right arm. Hospital staff attempted to draw from the left arm but could not obtain enough blood for the blood alcohol test kit. They used a second kit to draw additional blood from her hand. Appellant continued to tense up and stated several times that she was refusing to submit to the test.

A DMV hearing officer found appellant "refuse[d] or fail[ed] to complete the chemical test or tests after being requested to do so by a peace officer" and reimposed the license suspension. The written decision identified Burd's sworn statement and the crash report as the basis of these findings.[2] Appellant sought review by petitioning for a writ of administrative mandamus on the grounds the decision was not supported by the weight of the evidence. (Code Civ. Proc., § 1094.5.) The trial court denied the petition.

## DISCUSSION

The trial court uses its independent judgment when reviewing a decision by the DMV to suspend a driver's license. (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 394; Code Civ. Proc., § 1094.5, subd. (c).) It must independently weigh the evidence and make its own findings. (*Levingston v. Retirement Board* (1995) 38 Cal.App.4th 996,

---

[2] The hearing officer also considered an arrest report and video footage submitted by Officer Burd. These are not at issue here.

3

1000.) "[T]he party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) We generally review the trial court's rulings for substantial evidence, but "exercise independent review to the extent we determine legal issues such as the interpretation of statutes and administrative regulations." (*Harbor Regional Center v. Office of Administrative Hearings* (2012) 210 Cal.App.4th 293, 304 citing *Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 348.)

Our state's administrative per se statutes authorize DMV to revoke a person's driving privileges for one year if the person refuses an officer's request to take a blood alcohol test when suspected of driving while intoxicated. (§ 13350 et seq.) DMV or an arresting officer initiates the process by serving the driver with a notice of license suspension. (§ 13353.2, subds. (b) & (c).) The arresting officer must "immediately forward to the department a sworn report of all information relevant to the enforcement action . . . ." (§ 13380, subd. (a).) The sworn report "shall be made on forms furnished or approved" by DMV. (*Id.*, subd. (b).) Form 367, titled "Age 21 and Older Officer's Statement," serves this purpose. The agency automatically reviews the merits of the suspension internally. (§ 13557, subd. (a).) The driver may also request a hearing, which DMV must hold before the effective date of the suspension. (§ 13558, subds. (a) & (d).) DMV "shall consider the sworn report submitted by the peace officer pursuant to [section] 13380 and any other evidence accompanying the report" when determining whether to sustain the suspension. (§ 13557, subd. (a).)

Appellant describes Officer's Burd's sworn report as "wholly devoid of relevant information" about the central factual issue presented here—whether she refused to consent to a chemical test. She notes Officer Burd wrote just one word, "REFUSAL," when filling in the blank section of the report intended for "statements or actions by the driver that indicate a refusal or failure of each test." She contends DMV erred when it relied on Officer Burd's unsworn crash report to fill the sworn report's factual voids. Appellant argues DMV would have lacked an evidentiary basis to suspend her license had it properly excluded the crash report. We disagree.

Section 13557, subdivision (a) requires DMV to "consider the sworn report submitted by the peace officer . . . *and any other evidence accompanying the report*." (Italics added.) DMV did not err when it considered a crash report expressly referenced, by number, in Officer Burd's sworn report. To the contrary, the agency would have erred had it *not* considered it given subdivision (a)'s mandate to consider "any other evidence accompanying the report." We do not suggest an arresting officer must expressly reference and incorporate a document for it to "accompany" their sworn report, or that subdivision (a) limits the evidence DMV may consider. An administrative hearing "need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are *accustomed to rely in the conduct of serious affairs*, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c), italics added.)

5

*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150 acknowledged section 13380's provision that a sworn report include "'all information relevant to the enforcement action,'" yet declined to interpret the statute as prohibiting DMV from relying on unsworn reports. "[T]he Legislature clearly anticipates the sworn report will contain all or nearly all of the information necessary to remove the offender's license. In light of this legislative intent, the sworn report cannot be wholly devoid of relevant information. However, so long as a sworn report is filed, it is consistent with the relaxed evidentiary standards of an administrative per se hearing that technical omissions of proof can be corrected by an unsworn report filed by the arresting officer. In this case, the arresting officer filed a sworn report." (*Id.* at p. 159.) *MacDonald* concluded the unsworn report at issue, i.e., CHP Form 202 (DUI Arrest/Investigation Report), was "'the sort of evidence on which responsible person are accustomed to rely in the conduct of serious affairs'" and properly considered by DMV. (*Ibid.*, citing § 11513, subd. (c).) We conclude the same about Officer Burd's crash report.

We also disagree with appellant's characterization of the sworn report as "wholly devoid of relevant information." It includes, among other facts relevant to appellant's suspension: the date, time, and place of the collision; his determination that appellant drove one of the crashed vehicles; her "objective symptoms of intoxication," (capitalization and bold omitted) i.e., "[b]loodshot/watery eyes," "[o]dor of alcoholic beverages," "[u]nsteady gait," and "[s]lurred speech"; the date and time of her blood test; the nature of the alleged violation, i.e., "Chemical Test Refusal" and "PAS or other Chemical Test Refusal"; and the fact of her refusal upon receiving three standard pre-test

6

admonitions. He filled the narrative section of the report entirely, then concluded with the statement "[s]ee the crash report #9755-2024-00110 for further information." He then submitted this crash report to DMV along with the sworn statement.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:


YEGAN, Acting P. J.


BALTODANO, J.


7

Patricia L. Kelly, Judge

Superior Court County of Santa Barbara

———————————————————

William C. Makler and Andrew F. Alire for Petitioner and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Gabrielle H. Brumbach, Supervising Deputy Attorney General, Roza Patterson, and Amar Nair, Deputy Attorneys General, for Respondents.